Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| Magali M. Rodríguez Dones<br><br>Recurrida<br><br>vs.<br><br>Carlos V. Ramos Dones<br><br>Peticionario | KLAN202500464 | **APELACIÓN acogida como *CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.:<br>K DI2016-0412<br><br>Sobre: Divorcio |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda del Toro y la Jueza Díaz Rivera.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece el señor Carlos V. Ramos Dones (en adelante, Sr. Ramos Dones o peticionario) mediante un recurso de apelación y nos solicita la revocación de la "Resolución" emitida el 21 de abril de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en lo sucesivo, TPI o foro primario). Mediante el referido dictamen el foro primario declaró No Ha Lugar una solicitud de crédito al balance adeudado de pensión alimentaria fijada a favor de los hijos de las partes.

Tras examinar la naturaleza y procedencia del caso de autos, el recurso de apelación presentado ante nuestra consideración será acogido como un recurso de *Certiorari,* aunque conservará la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, expedimos el auto de *Certiorari*

---
[1] Notificada el 23 de abril de 2025.

solicitado a los fines de confirmar el dictamen recurrido, mediante los fundamentos que expondremos a continuación.

## I.

El vínculo matrimonial entre la señora Magali M. Rodríguez Dones (en adelante, Sra. Rodríguez Dones o recurrida) y el Sr. Ramos Dones fue disuelto mediante "Sentencia" emitida el 8 de agosto de 2016. Mediante dicho dictamen el TPI designó la residencia ubicada en la Urbanización Laderas de San Juan como hogar seguro de los menores procreados entre las partes. Asimismo, se le ordenó al peticionario continuar cumpliendo con los gastos que hasta ese momento cubría, incluyendo el pago de la hipoteca del inmueble, hasta tanto se fijara una pensión.

Celebrada la vista de fijación de pensión, el 30 de septiembre de 2016, el foro primario emitió una "Resolución" en la cual fijó al peticionario una pensión alimentaria a razón de $3,961.51 mensuales. Dicha cuantía incluía el gasto de vivienda de los menores el cual ascendía a $1,774.00 mensuales, entiéndase, el pago del préstamo hipotecario.

Posteriormente, la recurrida presentó el 17 de mayo de 2017 una "Moción de Desacato por Falta de Pago de Obligación Alimentaria". Resaltó, en lo pertinente que, en inobservancia a lo dictaminado por el TPI, el peticionario dejó de pagar la hipoteca del hogar de sus hijos. Alegó que, el Sr. Ramos Dones dedujo el pago de la hipoteca de la cuantía de la pensión, indicando que se haría responsable de pagarle directamente a la institución bancaria. Empero, la peticionaria adujo que, recibió una comunicación del acreedor hipotecario indicándole una morosidad en el pago desde octubre de 2016, por lo que solicitó que se encontrara el Sr. Ramos Dones incurso en desacato y se le ordenase el pago de $10,664.00.

Celebrada la vista a tales efectos, el foro primario emitió una "Resolución" el 19 de junio de 2017, mediante la cual ordenó al Sr.

Ramos Dones consignar la cantidad solicitada y, además, consignar mensualmente la cantidad de $1,774.00 correspondiente a la porción de vivienda de la pensión, ya que por estar el inmueble sujeto a un pleito de ejecución instado el 11 de mayo de 2017, el acreedor no estaba aceptando los pagos. El TPI, a su vez, estableció que dichas cantidades consignadas permanecerían en el tribunal hasta tanto se resolviera el asunto de la ejecución, ya sea para abonar a la deuda o para invertir en una propiedad nueva.

Acto seguido, el peticionario consignó $10,664.00 ese mismo día, según le fue ordenado, que correspondían a los pagos de octubre de 2016 hasta marzo de 2017. Asimismo, estuvo consignando varias cantidades correspondiente al gasto de vivienda, desde el 5 de septiembre de 2017 hasta el 5 de marzo de 2019.

Luego, la pensión fue modificada mediante "Resolución" dictada el 11 de marzo de 2019, no obstante, la cuantía correspondiente a los gastos de vivienda se mantuvo inalterada. Insatisfecho, el peticionario presentó un sin números de mociones de reconsideración dirigidas a controversias ajenas a la que nos ocupa, hasta que finalmente interpuso un recurso ante este foro apelativo.

Mientras se dilucidaban las otras controversias, el pleito de ejecución de hipoteca llegó a su fin, mediante "Sentencia" emitida el 6 de agosto de 2019, en la cual se declaró con lugar la demanda de ejecución de la propiedad.

Regresando a los hechos del caso de autos, este Tribunal se expresó sobre el recurso presentado, mediante "Sentencia" emitida el 17 de noviembre de 2020, identificada con el alfanumérico KLAN202000485. En lo pertinente a los gastos de vivienda, dictaminamos que:

*Pendiente aún el pleito de ejecución de hipoteca, y en aras de preservar el techo de los menores, el Tribunal estableció el monto de la pensión final tomando en consideración el pago mensual de la hipoteca que en ese entonces gravaba el hogar seguro de los menores. No erró el foro primario al así proceder. Conforme reseñamos en el Derecho que precede, la obligación de prestar alimentos abarca todo aquello que sea indispensable para el sustento de los alimentistas, incluyendo la habitación. Al imputar dicho gasto, se toma en consideración la cantidad mensual que, en efecto, la persona custodia paga o tiene que pagar por concepto de renta o hipoteca de la vivienda en la cual residen los o las alimentistas, o cualquier cantidad que la persona custodia aporta o tiene que aportar por la vivienda en la que residen estos o estas. El apelante como parte de su obligación alimentaria tiene el deber de contribuir al techo o vivienda de los alimentistas. El hecho de que el banco no aceptara los pagos por estar en medio de una ejecución resulta inmaterial e irrelevante. Precisamente por ello el Tribunal ordenó la consignación de los fondos hasta que se adjudicara la ejecución. No habiéndose adjudicado el pleito de ejecución al momento en que se dictó la resolución recurrida, el monto imputado por concepto de vivienda debe sostenerse.*

Tras varios incidentes procesales, la Sra. Rodríguez Dones presentó el 30 de marzo de 2022 una "Moción Solicitando el Retiro de Fondos Consignados", requiriendo el desembolso de $37,898.00, con el fin de satisfacer parte del retroactivo de pensión acumulado desde el 1 de abril de 2016 hasta el 30 de abril de 2019. En oposición, el Sr. Ramos Dones arguyó que, los fondos consignados fueron destinados para el pago de la hipoteca, por lo que no podían utilizarse para satisfacer las cuantías adeudadas de la pensión alimentaria. Replicando a los argumentos del peticionario, la Sra. Rodríguez Dones sostuvo que la controversia sobre la inclusión del gasto por vivienda en la pensión alimentaria era un asunto final y firme, inmune a ser relitigado.

En respuesta, el foro primario emitió una "Resolución" en la cual ordenó, en lo pertinente, que se le pagara a la Sra. Rodríguez Dones la cantidad de $37,898.00 por concepto de gastos de

vivienda. En desacuerdo con el dictamen, el Sr. Ramos Dones nuevamente solicitó la intervención de este foro apelativo. En esa ocasión, esta Curia emitió "Sentencia" el 23 de mayo de 2023, identificada con el alfanumérico KLCE202300417, donde concluimos que:

> **[L]a controversia sobre el gasto de la hipoteca es un asunto que no goza de finalidad y firmeza. Por ende, no constituye ley del caso.** *Ahora bien, observamos que, el argumento del Sr. Ramos Dones de que no debió tomarse en consideración el pago de la vivienda para el cómputo de la pensión alimentaria, depende de que, este tribunal, asuma como un hecho determinado que la hipoteca no se pagó entre los meses de abril y junio de 2016, ni desde enero de 2017 a abril de 2019, que no se estuvo efectuando o incurriendo en ningún otro gasto por vivienda, y que la Sra. Rodríguez Dones no pudo evidenciar que, en efecto, no se estaba incurriendo en un gasto por vivienda. Estos son hechos propuestos por el apelante ante el TPI para respaldar su petición.* **Esta controversia no fue atendida por el foro primario por entender que se trataba de un asunto que constituía ley del caso ... Como ya indicamos**, *el asunto de la inclusión del gasto de vivienda como parte del pago de la pensión alimentaria no ha sido resuelto por el tribunal,* **por lo que le corresponderá al foro a quo atender el mismo**. *Ello implica,* **determinar si la hipoteca se pagó**, *si se incurrió en algún gasto por vivienda,* **y si la Sra**. *Rodríguez Dones puede* **evidenciar dicho gasto**. *Hasta tanto, estamos impedidos de expresarnos al respecto.*

En consecuencia, revocamos la determinación relacionada a los pagos de hipoteca y devolvimos el caso para que se celebrase una vista evidenciaría, y se adjudicara dicha controversia. Luego de celebrada la vista evidenciaria el 8 de febrero de 2024, el TPI emitió la "Resolución" recurrida el 21 de abril de 2025. En ella, realizó las siguientes determinaciones de hechos:

> 1. *El 27 de mayo de 2021, la Sra. Rodríguez Dones adquirió la propiedad donde residen los menores.*
> 2. *Los gatos de cierre ascendieron a $53,386.16.*
> 3. *La Sra. Rodríguez Dones pagó $23, 381.15 de su cuenta.*
> 4. *Para pagar la diferencia, su pareja le prestó $30,000.*

> 5. *La Sra. Rodríguez Dones saldó esa deuda tan pronto recibió el dinero consignado.*
> 6. *La Sra. Rodríguez Dones reconoce que, desde abril de 2016 hasta marzo de2019, no se hicieron pagos de la hipoteca de la residencia designada como hogar seguro.*
> 7. *La Sra. Rodríguez Dones, en mayo de 2019, dos meses antes de que fuera finalmente ejecutada, se mudó de la residencia que había sido destinada como hogar seguro para los menores.*
> 8. *La Sra. Rodríguez Dones se mudó a la propiedad que eventualmente, adquirió en el 2021.*

Se desprende de la "Resolución" recurrida que, ante la consideración del TPI se encontraba una moción del peticionario solicitando un crédito al balance de la pensión alimentaria. Alegó el Sr. Ramos Dones que esta Curia sostuvo mediante su dictamen del 23 de mayo de 2023 que, de no haberse pagado la hipoteca, el dinero consignado para ello debía ser descontado de la pensión adeudada.

El foro primario concluyó que no procedía el crédito solicitado debido a la "Resolución" emitida el 19 de junio de 2017, la cual advino final y firme, donde el TPI instruyó que el dinero consignado correspondiente a la hipoteca sería utilizado para pagar la hipoteca, o de no permitirse, invertir en una propiedad nueva que sirviera como hogar de los menores. En vista de que la prueba aquilatada en la vista evidenciaria probó que el dinero consignado se invirtió en un techo seguro para los menores, el foro ultimó que la Sra. Rodríguez Dones actuó de conformidad con lo dictaminado, pues el dinero consignado fue utilizado en el mejor interés de los menores.

En descontento, el peticionario interpuso el presente recurso y señaló la comisión de los siguientes errores:

*Primer Error: Erró el TPI al entender que lo ordenado por el Tribunal de Apelaciones en el caso Rodríguez v Ramos, KLCE202300417, iba dirigido a un reembolso del dinero gastado por Rodríguez en la compra de un nuevo hogar en el 2022, fecha posterior a los periodos*

*por el cual Ramos solicitó crédito por la falta de pago de
la vivienda.*

*Segundo error: Erró el tribunal al estar prejuiciado y no
mostrar imparcialidad en el caso ante su consideración.*

Posteriormente, la recurrida presentó el 2 de junio de 2025
una "Moción de Desestimación; en la Alternativa, Escrito en
Oposición a Expedición de Auto". En virtud de ello, procedemos a
resolver con el beneficio de ambas comparecencias.

**II.**

**A.**

El recurso de *Certiorari* es el mecanismo procesal utilizado
para revisar aquellas resoluciones u órdenes interlocutorias
dictadas por el Tribunal de Primera Instancia. La Regla 52.1 de
Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone que, como
norma general, dicho recurso solo será expedido por este Tribunal
de Apelaciones en dos instancias, a saber: (1) cuando se recurra de
una resolución u orden bajo las Reglas 56 y 57; o (2) cuando se
recurra de la denegatoria de una moción de carácter dispositivo.

No obstante lo anterior, y a modo de excepción, este foro
apelativo intermedio podrá revisar órdenes o resoluciones
interlocutorias dictadas por el foro primario cuando se recurra de
lo siguiente: (1) decisiones sobre la admisibilidad de testigos de
hechos o peritos esenciales; (2) asuntos relativos a privilegios
evidenciarios; (3) anotaciones de rebeldía; (4) en casos de
relaciones de familia; y (5) en casos que revistan interés público o
en cualquier otra situación en la cual esperar a la apelación
constituiría un fracaso irremediable de la justicia. *Íd.*

Por su parte, nuestro Alto Foro ha expresado que, el auto
de *Certiorari* constituye un vehículo procesal discrecional que
permite a un Tribunal de mayor jerarquía revisar las
determinaciones de un Tribunal inferior. *Torres González v.*

*Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Si bien el auto de *Certiorari* es un vehículo procesal extraordinario de carácter discrecional, al atender el recurso no debemos "hacer abstracción del resto del Derecho". *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019).

Así, a los fines de ejercer sabiamente nuestra facultad discrecional en la consideración de los asuntos planteados mediante dicho recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, imparte que esta segunda instancia judicial tomará en consideración los siguientes criterios al determinar si procede o no la expedición de un auto de *Certiorari*:

> *(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
>
> *(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.*
>
> *(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> *(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> *(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> *(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> *(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

**B.**

Es doctrina reiterada que, como regla general, "un tribunal debe seguir sus decisiones previas en los casos". *Pueblo v. Ríos Nieves,* 209 DPR 264, 278 (2022). En ese sentido, "los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito

judicial, mediante dictamen [final y] firme, constituyen la ley del caso". *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020). De este modo, aquellas cuestiones finales consideradas y decididas por el tribunal "obligan, tanto al tribunal de instancia como al foro que las dictó, si el caso vuelve a su consideración". *Íd.*, a la pág. 201. Así, se cumplen los siguientes propósitos: (1) garantizar la sana práctica de que el juzgador no alterare sus pronunciamientos dentro de un mismo caso, (2) promover el trámite ordenado y expedito de los litigios, y (3) asegurar que las partes puedan proceder sobre unas directrices confiables y certeras. *Íd.*, a las págs. 200-201.

El criterio esencial para que pueda invocarse esta doctrina es que la decisión sea final. *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 9 (2016). De ser así, tanto el juez como las partes quedan sujetos a las cuestiones finales consideradas y decididas por el tribunal. *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005). No obstante lo anterior, este mandato no es inflexible ni absoluto, pues, a modo de excepción, si la ley del caso es errónea y puede causar una gran injusticia, el tribunal puede emplear una norma de derecho distinta. *Pueblo v. Serrano Chang, supra,* a la pág. 653. Por lo que, en situaciones excepcionales, la decisión puede ser descartada con el fin de resolver en forma justa. *Cacho Pérez v. Hatton Gotay y otros, supra,* a las págs. 9-10.

### c.

La interferencia de este foro apelativo con las determinaciones discrecionales que efectúa el Tribunal de Primera Instancia solo procede cuando este último: "(1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular,*

152 DPR 140, 155 (2000). Por consiguiente, ante la ausencia de alguna de estas circunstancias, las decisiones discrecionales que toma el foro primario no serán revocadas. Ello se debe a que "los foros apelativos no deben pretender administrar ni manejar el trámite regular de los casos ante el foro primario". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

Nuestro Tribunal Supremo ha expresado que la discreción es "el más poderoso instrumento para hacer justicia reservado a los jueces". *Rodríguez v. Pérez*, 161 DPR 637, 651 (2004). Por lo que, nuestro Máximo Foro ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020), citando a *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por este motivo, el concepto de discreción está "inexorable e indefectiblemente atado al concepto de la razonabilidad. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018).

Ahora bien, la discreción no justifica que el juzgador pueda actuar arbitrariamente o hacer abstracción del resto del derecho. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). En ese sentido, la jurisprudencia ha establecido ciertos parámetros para determinar cuándo un tribunal ha incurrido en pasión, prejuicio, parcialidad o abuso de discreción. Por ejemplo, un juzgador incurre en pasión, prejuicio o parcialidad cuando actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

Por su parte, el juez incurre en abuso de discreción si: (1) ignora sin fundamento algún hecho material importante que no

podía pasar por alto; (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Rivera Montalvo, supra,* a la pág. 374. Finalmente, incurre en error manifiesto aquél juzgador que en "la apreciación de [la] prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Pueblo v. Irizarry,* 156 DPR 780, 816 (2002). En estos casos, "la intervención del tribunal apelativo es necesaria y procedente". *Íd.*

## III.

De entrada, debemos mencionar que, de conformidad con los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* este foro apelativo intermedio se encuentra en posición de expedir el *auto* solicitado. Ante la discreción que poseemos para atender el asunto, procedemos a resolver la presente controversia.

El Sr. Ramos Dones aduce que, constituye un enriquecimiento injusto otorgarle a la Sra. Rodríguez Dones el dinero consignado como reembolso por la compra de una propiedad en el 2022, cuando la orden de consignación del pago de la hipoteca tuvo eficacia hasta mayo de 2019, dado que a partir de esa fecha los menores se mudaron a la nueva propiedad y el pago de vivienda regresó a pagarse junto a la pensión alimentaria. Por ende, procedía que se le acreditaran las cuantías consignadas a la deuda de la pensión alimentaria.

Con relación al segundo error, el peticionario arguye que el foro primario actuó parcializado al rechazar el crédito a la pensión alimentaria. Señaló como actos arbitrarios las expresiones del TPI cuando mencionó que la pérdida del hogar fue resultado de la inacción del peticionario, ya que según el Sr. Ramos Dones, la

culpa fue compartida. Puntualizó, además, que el foro primario mostró imparcialidad al ignorar lo resuelto por esta Curia en nuestra "Sentencia" del 23 de mayo de 2023.

Por su parte, la recurrida esgrime que el foro primario dio justo valor probatorio a la prueba desfilada en la vista evidenciaria —en la cual testificó y fue ampliamente interrogada y contrainterrogada— y correctamente dispuso que el crédito era improcedente toda vez que quedó probado que el dinero consignado fue utilizado por la recurrida para adquirir un techo para los menores tal como se dispuso en la "Resolución" emitida el 19 de junio de 2017. Dictamen que advino final y firme, tras no ser impugnado por el Sr. Ramos Dones.

Con los argumentos presentados en su primer señalamiento de error, el peticionario pretende impugnar la "Resolución" del 19 de junio de 2017, donde el TPI determinó que **las cantidades consignadas permanecerían en el tribunal hasta tanto se resolviera el asunto de la ejecución, ya sea para abonar a la deuda o para invertir en una propiedad nueva.**

Dicho dictamen no fue objetado por el Sr. Ramos Dones, por ende, este cobró finalidad y firmeza, lo cual impide su posterior revisión. Incluso, el peticionario cumplió con lo ordenado inmediatamente, consignando la suma adeudada el mismo día, y continuo consignando mensualmente el pago de la hipoteca.

Según reseñamos en el acápite anterior, cuando una determinación del tribunal adviene final y firme, tanto el juzgador como las partes quedan sujetos a las cuestiones decididas por el foro, ello, para garantizar un trámite ordenado y expedito de los litigios y asegurar directrices confiables y certeras. Las controversias finales solo pueden ser reexaminadas ante la presencia de un error craso o gran injusticia, elementos que no se cumplen en el caso de autos.

Por lo anterior, resolvemos que la "Resolución" del 19 de junio de 2017 se convirtió en la ley del caso. Siendo lo decretado en ese dictamen el curso de acción a seguir, concluimos que el foro primario tampoco erró al determinar que era improcedente el crédito, ya que se probó en la vista evidenciaria que el dinero consignado correspondiente al pago de la hipoteca fue utilizado para la compra de un nuevo hogar para los menores, conforme a lo resuelto por el TPI.

Añadimos que, lo ordenado en el referido dictamen quedó en suspenso debido al pleito de ejecución. Una vez resuelto el aludido caso, ordenamos la celebración de una vista evidenciaria para dilucidar cuáles medidas fueron tomadas concernientes al techo de los menores. Una vez aclarada dicha interrogativa, entonces el TPI se encontró en posición de establecer cómo adjudicar las sumas consignadas, cónsono a lo decidido en la ley del caso.

Ahora, el peticionario alega que el foro primario actuó con imparcialidad al resolver la presente controversia. El Sr. Ramos Dones acusó al foro primario de prejuicio por una expresión sobre el pleito de ejecución del inmueble, no obstante, el peticionario no logró fundamentar cómo una expresión sobre el caso paralelo pudo incidir en el raciocinio del foro, máxime cuando su determinación fue correctamente arraigada en un dictamen emitido previo a la ejecución de la propiedad.

Finalmente, consideramos otro señalamiento del peticionario en el cual arguyó que, el TPI mostró imparcialidad al ignorar lo resuelto por este Tribunal de Apelaciones, específicamente cuando expusimos que "el asunto de la inclusión del gasto de vivienda, como parte del pago de la pensión alimentaria no ha sido resuelto por el tribunal, por lo que le corresponderá al foro *a quo* atender el

mismo".[2]  Con dicha expresión no sugerimos que el TPI no había determinado si el gasto de vivienda era parte de la pensión alimentaria, pues como bien señaló el foro primario, los alimentos incluyen todo lo indispensable para el sustento de los menores, incluyendo su vivienda.  Lo que este Tribunal ordenó fue que se desfilara prueba con el fin de determinar si la hipoteca se pagó o si se incurrió en algún pago por concepto de vivienda, para que se pudiera determinar qué hacer con el dinero consignado y cómo este se debía computar con relación al balance adeudado correspondiente al resto de la pensión alimentaria, análisis que llevó a cabo el TPI en la resolución recurrida luego de celebrar la vista evidenciaria ordenada.  Recordemos que, al fijar la pensión alimentaria se estableció una suma universal, que incluía la cuantía de la hipoteca para cubrir los gatos de vivienda de los menores.  Quien decidió separar los pagos fue el propio peticionario, empero, tal acción no significa que el gasto de vivienda no sea parte de los alimentos.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte del presente dictamen, expedimos el auto de *Certiorari* solicitado a los fines de confirmar la "Resolución" emitida 21 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[2] KLCE202300417, págs. 12-13.